IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CHINAIS ACOSTA ROBLEDO<br><br>Plaintiff,<br><br>v.<br><br>FURIEL AUTO CORP. and<br>FRANCISCO FURIEL RAMOS-MARTÍNEZ<br><br>Defendants. | CIVIL NO.: 14-1693 (MEL) |

**OPINION AND ORDER**

**I.   PROCEDURAL HISTORY**

On January 10, 2015, Chinais Acosta-Robledo ("Acosta-Robledo" or "plaintiff") filed an amended complaint against Furiel Auto Corp. ("Furiel Auto") and Francisco Furiel Ramos-Martínez ("Ramos-Martínez") (collectively "defendants"), alleging claims pursuant to Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act, 42 U.S.C. 2000(e), *et seq.*, and for violations of rights guaranteed by the P.R. Const., Art. II, §§ 1, 16, and numerous local statues, including Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29 § 146, *et seq.* ("Law 100"), Law No. 69 of July 6, 1985, P.R. Laws Ann. tit. 29, §1321, *et seq.* ("Law 69"), Law No. 17 of April 22, 1988, P.R. Laws An. Tit. 29 § 155, *et seq.* ("Law 17"), and Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. §§ 5141-5142. ECF No. 24. Pending before the court is defendants' motion to dismiss all claims against Ramos-Martínez and the sexual harassment claims against both defendants, along with plaintiff's response in opposition. ECF Nos. 30, 32. For the reasons that follow, defendants' motion to dismiss is granted in part and denied in part.

## II. LEGAL ANALYSIS

### A. Title VII Individual Liability

As the First Circuit Court of Appeals held in <u>Fantini v. Salem State College</u>, "[t]here is no individual employee liability under Title VII." 557 F.3d 22, 31 (1st Cir. 2009). Defendants' first argument is that since Title VII does not permit claims against defendants in their individual capacity, Ramos-Martínez is not a proper party under Title VII. ECF No. 30, at 4. In her response in opposition, plaintiff responds that they did not mean to sue Ramos-Martínez pursuant to Title VII, noting that at the Initial Scheduling Conference ("ISC") held on December 22, 2014 she clarified that she is not suing Ramos-Martínez under Title VII in his individual capacity. ECF No. 32. As she points out, at the ISC all Title VII individual capacity claims against Ramos-Martínez were dismissed. ECF No. 23, at 1. However, subsequent to the ISC, on January 15, 2015, plaintiff filed an amended complaint referring to defendants in the plural in her Title VII cause of action. ECF. No. 24, ¶¶ 45-54. To the extent, if at all, that the amended complaint is unclear as to whether plaintiff is pursuing a Title VII individual liability claim against Ramos-Martínez, such claim is dismissed with prejudice based on the holding in <u>Fantini</u>. 557 F.3d at 31.

### B. Supplemental Claims

Defendants' second argument is that the court should decline to exercise supplemental jurisdiction over the state-law claims against Ramos-Martínez and brought by Acosta-Robledo, in view that Ramos-Martínez has no federal causes of action pending against him. ECF No. 30, at 4-5. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims within such original jurisdiction that they form part of the same case or controversy under Article

III of the United States Constitution." 28 U.S.C. § 1367(a). As explained in Irizarry-Santiago v. Essilor Indus., § 1367(a) applies to confer supplemental jurisdiction over state law claims against one defendant that share a common nucleus of operative fact with a federal claim against a co-defendant:

> The Court finds that exercising supplemental jurisdiction over the state law claims against defendant Deterre is appropriate because they arise from the same nucleus of operative fact as her Title VII and ADEA claims against defendant Essilor. . . . In the pleadings, plaintiff Irizarry based her Title VII and ADEA claims on the actions of her supervisor, defendant Deterre. . . . Plaintiff Irizarry based the grounds for her state law claims against Deterre on the same facts pleaded in her Title VII and ADEA complaint against defendant Essilor. Because plaintiff Irizarry's federal and state law claims are based on the actions of defendant Deterre, the Court finds that both claims are substantially related and arise out of the same set of operating facts.

Irizarry-Santiago v. Essilor Indus., 929 F. Supp. 2d 30, 34 (D.P.R. 2013) (denying motion to dismiss state law claims against co-defendant Deterre where the plaintiff had not brought a federal claim against him) (citing 28 U.S.C. § 1367(a)); see also Contreras Bordallo v. Banco Bilbao Vizcaya de Puerto Rico, 952 F. Supp. 72, 74 (D.P.R. 1997) (dismissing all federal claims against a particular co-defendant, but retaining supplemental jurisdiction over state law claims against him where the court retained original jurisdiction over other federal claims). Similarly, § 1367(a) confers supplemental jurisdiction over the state law claims of a plaintiff that are part of the same case or controversy as the federal claim of a co-plaintiff. See, e.g., Jesús-Santos v. Morgan Stanley Dean Whitter, Inc., Civ. No. 05-1336 (DRD), 2006 WL 752997, at *1-3 (D.P.R. Mar. 22, 2006) (exercising supplemental jurisdiction over state law claims by two co-plaintiffs where the court possessed federal question jurisdiction over federal securities claims by

two other co-plaintiffs where diversity of citizenship was lacking but the state claims were "so intimately related to the federal securities law claims that they form[ed] part of the same case or controversy or a common nucleus of operative facts.") (citing 28 U.S.C. § 1367(a)).

When claims constitute part of the same case or controversy pursuant to § 1367(a), "[u]nless a court can anchor its decision to decline supplemental jurisdiction in one of the four specific scenarios of § 1367(c), supplemental jurisdiction must be exercised." C. Alan Wright et al., Federal Practice & Procedure § 3567.3 (3d ed. 2014); see also Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996) ("A federal court exercising jurisdiction over an asserted federal-question claim must also exercise supplemental jurisdiction over asserted state-law claims that arise from the same common nucleus of operative fact.") (citing 28 U.S.C. § 1367(a)). In this case, the court retains original jurisdiction of Acosta-Robledo's Title VII and Pregnancy Discrimination Act claims against Furiel Auto, and thus the court retains supplemental jurisdiction over claims that form part of the same case or controversy pursuant to § 1367(a). All state-law claims in the complaint share a common nucleus of operative fact, namely how Ramos-Martínez treated Acosta-Robledo at Furiel Auto. Furthermore, dismissing the state law claims against Ramos-Martínez, while retaining federal claims against Furiel Auto based on identical allegations, would run contrary to principles of judicial economy. Likewise, requiring Acosta-Robledo to refile the same claims in local court while this litigation has been pending since September 10, 2014 would be both inconvenient and inefficient. Since the local law claims against Ramos-Martínez and filed by Acosta-Robledo are substantially related to the federal causes of action over which the court retains original jurisdiction, defendants' motion to dismiss the supplemental claims against Ramos-Martínez is denied.

### C. Title VII and Exhaustion of Administrative Remedies

Finally, defendants argue that the court lacks subject matter jurisdiction over plaintiff's sexual harassment claims because Acosta-Robledo has not exhausted administrative remedies with regard to them. ECF No. 30, at. 5. They claim that "plaintiff failed to include any allegations of sexual harassment in her administrative charge before the Puerto Rico Anti-Discrimination Unit" (the "ADU") and thus "has failed did to exhaust administrative remedies in relation to all the sexual harassment claims now alleged in the Amended Complaint." Id. Plaintiff responds that she did make allegations of harassment on the basis of her gender in her amended ADU charge. ECF No. 32, at 2.

Prior to filing a suit in federal court under the ADEA, a plaintiff must first exhaust administrative remedies by filing a charge against the allegedly discriminatory party before the Equal Employment Opportunity Commission (the "EEOC") within 300 days of the alleged discriminatory act.[1] Jorge v. Rumsfeld, 404 F.3d 556, 564-65 (1st Cir. 2005). This requirement exists "to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996) (citing Powers v. Grinnell Corp., 915 F.2d 34, 37 (1st Cir. 1990)). "In employment discrimination cases, '[t]he scope of the civil complaint is . . . limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge.'" Id. (citing Powers, 915 F.2d at 37).

---

[1] Pursuant to a Worksharing Agreement between the ADU and the EEOC, "a charge filed with the ADU is also considered a filed with the EEOC. Title VII charges filed with the Commonwealth are considered dual-filed, and vice versa." Cintrón-Garcia v. Supermercados Econo, Inc., 818 F. Supp. 2d 500, 509 (D.P.R. 2011); see also López-Machin v. Indupro, 668 F. Supp. 2d 320, 322 (D.P.R. 2009) ("Discrimination claims brought before the EEOC often parallel Commonwealth law causes of action, and these claims may be originated either at the EEOC or the [ADU], in accordance with federal law that authorizes a Worksharing Agreement between the two agencies.").

Under Title VII, sexual harassment in the form of a "hostile work environment, 'occurs when one or more supervisors or co-workers create an atmosphere so infused with hostility towards members of one sex that they alter the conditions of employment for them.'" Acevedo Vargas v. Colón, 68 F.Supp.2d 80, 87 (D.P.R. 1999) (citing Lipsett v. University of P.R., 864 F.2d, 881 897 (1sr Cir. 1988)). A hostile work environment "is created by 'repeated conduct'— 'a series of separate acts that collectively constitute one 'unlawful employment practice.'" Marrero v. Goya of Puerto Rico, 304 F.3d 7, 18 (1st Cir. 2002) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112 (2002)). With respect to local law, "[c]ourts have recognized that Title VII hostile work environment claims brought under Law 17, Law 69, and Law 100 are essentially the same." Godoy v. Maplehurst Bakeries, Inc., 747 F.Supp.2d 298, 317-18 (D.P.R. 2010) (citing Aponte-Rivera v. DHL Solutions (USA), Inc., Civ. No. 07-1950, 2010 WL 376330, at *1-2 (D.P.R. Jan. 25, 2010); Figueroa García v. Lilly del Caribe, Inc., 490 F.Supp.2d 193 (D.P.R. 2007)); see also Valentín-Almeyda v. Muncipality of Aguadilla, 447 F.3d 85, 101-02 (1st Cir. 2006).

Plaintiff alleges in the amended complaint in this case that after she told Ramos-Martínez that she was pregnant "she began to suffer a pattern of pregnancy and gender discrimination, harassment and hostilities." ECF No. 24, ¶ 10. She avers that Ramos-Martínez was "very upset" when she missed work on October 19, 2013 due to pregnancy-related symptoms and that he became "so offended . . . that he gave orders to terminate her." Id. ¶¶ 11-13. She claims that after he was reminded that she was pregnant Ramos-Martínez decided not to terminate her at that time, "but then instructed supervisory employees not to be lenient with [her] in any manner and to inform him of any mistake [she made] in order to terminate her." Id. ¶ 13. On October 21,

6

2013 she avers that she was "suddenly" transferred from the sales department "the area of administration" under the supervision of Wilfredo Flores ("Flores") and that Flores told her she would no longer be registering Toyota warranties. Id. ¶¶ 14-15. Next, she states that she informed Flores of an appointment she had on October 22, 2013 and that afternoon he informed her that she would no longer be "in charge of keeping the inventory of vehicles" and "from that day on she was to report permanently to his office." Id. ¶¶ 16-17. She alleges that as of October 23, 2013 she was transferred to work at the service department, but did not receive instruction as to what her duties were and that she has remained there without any duties. Id. ¶¶ 20-21. She avers that she requested a chair as an accommodation for her pregnancy, but no desk or chair was provided to her for a period of two weeks. Id. ¶ 23. Plaintiff was the only female working among approximately 17 men at the service department, and she shared a single bathroom "in deplorable and antigenic condition" with them. Id. ¶¶ 24-25. She requested that the bathroom be cleaned, but the cleaning personnel "would use excess amount[s] of bleach," which would make plaintiff sick to her stomach. Id. ¶ 26. She claims that "[a]nother example of [d]efendant's pattern of pregnancy and gender discrimination and harassment against [her]" is that on November 29, 2013 she was "unwilling" to work due to pregnancy-related illness and her supervisor told her to return to work the next day with a medical certificate, which she claims is inconsistent with the company's policy for requesting medical certificates. Id. ¶¶ 30-32. In December 2013 she claims that her hours were reduced and on one occasion her paycheck was reduced "in order to penalize her." Id. ¶¶ 34-35.

  Each of the factual averments listed above are also contained within plaintiff's amended charge to the ADU, which she filed on January 24, 2014. See ECF No. 40-1, at 3-5. She avers

that the first act in a "continuous" pattern of discrimination occurred on October 21, 2013. Id. at 3. Although plaintiff's original ADU charge is undated, even the amended charge was filed within 300 days of the first allegedly discriminatory act. Her allegations at the administrative level are more than merely "reasonably related" to her allegations of harassment in this case—they are nearly identical. Her amended administrative charge repeatedly alleges that she experienced a "pattern of harassment" at Furiel Auto. Id. at 3-5. Furthermore, she clearly indicated in the administrative charges that "sex and pregnancy" were the grounds for discrimination. Indeed, the contents of her timely-filed amended charge would have allowed the ADU or the EEOC to investigate the conduct that she describes in the complaint, as required to exhaust administrative remedies.

Her amended complaint in the case of caption, filed January 5, 2015, does contain one additional allegation that "[t]he hostile and offensive work environment . . . reached a very sickening level when on or about December 1, 2014, [she] was sexually harassed when she was tagged with a picture of an erected black male penis purported to be a Snicker [*sic*] chocolate bar." Id. ¶ 42. This particular allegation of sexual harassment was not included in her amended administrative charge—it allegedly occurred after the date that plaintiff filed the amended charge. The fact that this one alleged incident occurred after the date of her amended charge does not bar her from including it in the complaint as part of the pattern of harassment she allegedly experienced, as "[u]nlike discrete claims of discrimination and retaliation, the exhaustion requirement of hostile work environment claims is less stringent . . . [and the p]laintiff need only have filed an [administrative] complaint alleging some of the claims that comprise the hostile work environment claim." See Nurriddin v. Goldin, 382 F.Supp.2d 79, 107 n. 10 (D.D.C. 2005);

see also Morgan, 536 U.S. at 112 ("Provided that an act contributing to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."); see also Godoy, 747 F.Supp.2d at 309 (citing Morgan, 536 U.S. at 117). Because the at least one of the alleged actions contributing to her hostile work environment claims was included in her timely-filed administrative charge, plaintiff has fulfilled the exhaustion requirement for her federal and local hostile work environment claims.

### III.  CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**, as follows. To the extent that the complaint raises Title VII claims against Ramos-Martínez, defendants' motion to dismiss is **GRANTED** and the Title VII claims against Ramos-Martínez are dismissed with prejudice. With respect to both the supplemental state-law claims against Ramos-Martínez and the sexual harassment claims against both defendants, defendants' motion to dismiss is **DENIED** and the claims remain active.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 19th of June, 2015.

                                                                         s/Marcos E. López  
                                                                         U.S. Magistrate Judge