IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CHINAIS ACOSTA ROBLEDO,

Plaintiff,

v.

CIVIL NO.: 14-1693 (MEL)

FURIEL AUTO CORP., et al.

Defendants.

## OPINION AND ORDER

### I.   PROCEDURAL HISTORY

On September 10, 2014, plaintiff Chinais Acosta Robledo ("Acosta Robledo" or "plaintiff") filed an amended complaint against Furiel Auto Corp. ("Furiel Auto") and Furiel Ramos Martínez ("Ramos Martínez") (collectively "defendants") alleging discrimination on the basis of sex and condition of pregnancy in violation of Title VII of the Civil Rights Act and the Pregnancy Discrimination Act, 42 U.S.C. 2000(e), *et seq.*, and for violations of rights guaranteed by the P.R. Const., Art. II, §§ 1, 16, and numerous local statutes including Law No. 100 of June 30, 1959 ("Law 100"), P.R. Laws Ann. tit. 29, § 146, *et seq.*, Law No. 69 of July 6, 1985 ("Law 69"), P.R. Laws Ann. tit. 29 § 1321, *et seq.*, Law No. 17 of April 22, 1988 ("Law 17"), P.R. Laws Ann. tit. 29 § 155, *et seq.*, and Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. §§ 1541-1542. ECF No. 24. On March 11, 2015, the Court dismissed with prejudice plaintiff's claims under Articles 1802 and 1803 of the Puerto Rico Civil Code. ECF No. 37. On June 19th, 2015, the Court dismissed with prejudice the plaintiff's Title VII claims against Ramos Martínez. ECF No. 42. Pending before the court is defendants' motion for

summary judgment (ECF No. 49), plaintiff's memorandum in opposition (ECF No. 59), and defendants' reply (ECF No. 66).

## II.   UNCONTESTED FACTS

Furiel Auto maintains two facilities on the same street in Ponce, Puerto Rico. ECF Nos. 49-1, ¶¶ 7, 9; 59-1, ¶¶ 7, 9. The first is dedicated to the sale of new Toyotas ("New Dealer") and the second to the sale of used cars ("Used Dealer"). ECF Nos. 49-1, ¶ 8; 59-1, ¶ 8. Plaintiff began working as an office assistant in the New Dealer on August 11, 2011.[1] ECF Nos. 49-1, ¶¶ 3–4, 17; 59-1, ¶¶ 3–4, 17; 66-1, at 2. At all times relevant to this matter, the New Dealer was undergoing construction. ECF Nos. 49-1, ¶ 10; 59-1, ¶ 10. Because of the construction in the New Dealer, around thirty-five employees were transferred to the Used Dealer. ECF Nos. 49-1, ¶ 14; 59-1, ¶ 14. The only employees that remained at the New Dealer were the sales representatives, Secretary Millie Rivera, and plaintiff. ECF Nos. 49-1, ¶ 15; 59-1, ¶ 15. Plaintiff was transferred to the Furiel Auto dealer in Bayamón in April 2013, but was transferred back to Ponce on September 13, 2013. ECF Nos. 49-1, ¶¶ 17, 19–20; 59-1, ¶¶ 17, 19–20. By the time plaintiff returned from Bayamón, Secretary Millie Rivera had been transferred to the Used Dealer. ECF Nos. 49-1, ¶ 22; 59-1, ¶ 22.

During the week of the fourteenth through the eighteenth of October, 2013, plaintiff informed Furiel Auto that she was pregnant. ECF Nos. 49-1, ¶ 23; 59-1, ¶ 23; 66-1, at 7–8. On October 21st, 2013, plaintiff was transferred to the sales area of the Used Dealer. ECF Nos. 49-1, ¶ 24; 59-1, ¶¶ 24–25; 66-1, at 8. There plaintiff worked with four other employees: Manager Wilfredo Flores, Secretary Millie Rivera, and two sales representatives. ECF Nos. 49-1, ¶ 25; 59-1, ¶ 24. Plaintiff worked in this area for approximately a day and a half. ECF Nos. 49-1, ¶ 26; 55-

---

[1] Although plaintiff contends in one section that she was a "Secretary/Office Clerk", ECF No. 59-1, ¶ 5, she admitted defendant's statement that she was an "office assistant," ECF Nos. 49-1, ¶ 4; 59-1, ¶¶ 4-5.

1, at 49:11–17. On October 23, 2013, plaintiff was transferred to the service department in the Used Dealer. ECF Nos. 49-1, ¶¶ 27–28; 59-1, ¶¶ 27–28. Pablo Maldonado Olivieri was the service department manager. ECF Nos. 49-1, ¶ 33; 59-1, ¶ 33. Plaintiff continued to be employed as an office assistant. ECF Nos. 49-1, ¶ 4; 59-1, ¶ 4.

### III.   LEGAL STANDARD

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." McCarthy v. Nw.

Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). The plaintiff need not, however, "rely on *uncontradicted* evidence . . . . So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115 (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## IV.   ANALYSIS

### a.  Disparate Treatment

Title VII prohibits an employer from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000(e)(2)(a)(1). The Pregnancy Discrimination Act included pregnancy in the term "sex". Young v. United Parcel Service, Inc., 135 S.Ct. 1338, 1343 (2015). Under Title VII, a plaintiff can allege either intentional discrimination on the basis of her protected trait, known as disparate treatment, or unintentional discrimination that, in reality, has a disproportionate adverse effect on the protected class, known as disparate impact.  Ricci v.

4

DeStefano, 557 U.S. 557, 577 (2009); see also Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 420 (1st Cir. 1996). Here, the plaintiff has alleged disparate treatment.

When a plaintiff alleging disparate treatment does not present "the evidentiary equivalent of a 'smoking gun'," Smith, 76 F.3d at 421, then the analysis must proceed under the burden-shifting framework established in McDonnel Douglas Corp. v. Green, 411 U.S. 792 (1973). The plaintiff must first establish a *prima facie* case by showing that (1) she is pregnant and (2) her job performance has been satisfactory, but (3) the employer nonetheless took adverse employment action against her while (4) continuing to have her duties performed by a comparably qualified person. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000). The "initial burden of establishing a *prima facie* case of disparate treatment is not onerous." Johnson v. Allyn & Bacon, Inc., 731 F.2d 64, 70 (1st Cir. 1984). Establishing the *prima facie* case creates a rebuttable presumption that discrimination was the cause of the adverse employment action. Smith, 76 F.3d at 420. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason that justifies the employment action. Id. Only the burden of production shifts to the defendant; the burden of persuasion remains with the plaintiff. Cumpiano v. Banco Santander P.R., 902 F.2d 148, 153 (1st Cir. 1990). Once the defendant articulates nondiscriminatory reasons, the presumption disappears, and the burden shifts back to the plaintiff to demonstrate that defendant's reasons are "mere pretext" for discriminatory motives. Martínez-Burgos v. Guayama Corp., 56 F.3d 7, 12 (1st Cir. 2011). The defendant does not contest that the plaintiff meets the first two prongs of her *prima facie* case. ECF No. 49, at 7–8. Thus, the analysis here will begin with the third prong.

### i.  Adverse Employment Action

Employment action is sufficiently adverse when, from the perspective of a reasonable person in the plaintiff's position, the action "materially change[s] the conditions of plaintiffs' employ." Gu v. Boston Police Dept., 312 F.3d 6, 14 (1st 2002); see also Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 472 (1st Cir. 2010). "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 23 (1st Cir. 2002) (internal quotations omitted). "Reassignment with significantly different responsibilities" is an example of a typical adverse employment action. Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). However, a lateral transfer that "involves only minor changes in working conditions normally does not constitute an adverse employment action." Marrero, 304 F.3d at 23 (holding that secretary's permanent, lateral transfer was not an adverse employment action where "her general job description and salary remained the same," despite additional duties and strict supervision); see also Traylor v. Brown, 295 F.3d 783, 789 (7th Cir. 2002) (holding that refusal to allow plaintiff to perform clerical and blacksmith duties did not constitute an adverse employment action because her pay was unaffected and her job responsibilities were not materially diminished); Parish v. Immanuel Medical Center, 92 F.3d 727, 731-32 (8th Cir. 1996) (finding material adverse employment action when employee was transferred to a newly created position that required working later hours, removal of job duties that she had previously held and received training for, and so few job duties that when plaintiff resigned, the job was subsequently handled by other employees in their spare time). Changes in schedule or wage amount to adverse employment action only when it causes a "significant

change in benefits." See Cham v. Station Operators, Inc., 685 F.3d 87, 94 (1st Cir. 2012) (holding that losing three shifts was not adverse employment action because the schedules typically fluctuate and the loss did not affect the plaintiff's benefits). Employment actions, however, do not need to be viewed in isolation if the cumulative weight of the allegations shows the requisite adversity. See Rodríguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 286 (1st Cir. 2014); Hermreiter v. Chicago Hous. Auth., 315 F.3d 742, 744-45 (7th Cir. 2002) (noting that some employment actions can be materially adverse where cumulatively the "conditions in which he works are changed in a way that subjects him to humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment").

Furiel Auto claims that plaintiff has never received any adverse employment action. ECF No. 49, at 8. It is true that plaintiff has not been fired nor had her salary permanently reduced. ECF Nos. 49-1, ¶ 4, 43; 59-1, ¶ 4, 43 The conditions plaintiff contends amount to adverse employment action can generally be divided into three categories: (1) the plaintiff's transfer, (2) those affecting plaintiff's pay, and (3) general working conditions. [2]

---

[2] Allegations supported only by inadmissible hearsay are excluded. Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment."). As the statements at issue here were made by employees of Furiel Auto, it is necessary to determine whether they are admissions of party opponents under Fed. R. Evid. 801(d)(2)(D), which provides that a statement is not hearsay if it is "offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed . . . ." Where the statement was repeated by another party, not the original declarant, each individual involved must either fit Rule 801 or a hearsay exception. Vázquez v. López Rosario, 134 F.3d 28, 34 (1st Cir. 1998) ("Every link in the chain must be admissible . . . .").

First, plaintiff alleges in her Memorandum in Opposition to Defendant's Motion for Summary Judgment that Sales Manager Figueroa told plaintiff that Ramos Martínez was "very upset" with plaintiff's pregnancy-related absence. ECF No. 59, at 3–4. The Court does not even need to determine if this statement falls into a hearsay exception, because, in addition to this being hearsay, the plaintiff did not support this assertion with a citation to the record. Pursuant to Local Rule 56(e), "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." Next, plaintiff alleges that "then employee Efraín Rivera" informed her that someone instructed the service department employees "not to do [plaintiff] any favors because [she] was 'in hot waters' with Ramos Martínez." ECF No. 59-2, ¶ 11. However, plaintiff has not cited any specific portion of the record specifying what Efraín Rivera's role was with Furiel Auto or, importantly, who actually informed the service department employees of this alleged statement. A statement by an unknown declarant, without more, makes it impossible for the Court to determine if the statement is an admission of a party-

Plaintiff alleges that being transferred twice, along with her loss of duties in the new roles, constitutes adverse employment action. ECF. No. 59, at 13. First, it is undisputed that plaintiff was transferred from the New Dealer to the Used Dealer, under the supervision of Manager Wilfredo Flores. ECF Nos. 49-1, ¶ 24–25; 59, at 4. According to plaintiff, when she was transferred she was stripped of three of her previous duties: verifying sales contracts for units sold, registering the Toyota vehicles, and keeping the inventory of vehicles. ECF No. 59-2, ¶ 3.[3] She worked under Mr. Flores for approximately day and a half. ECF Nos. 49-1, ¶ 26; 55-1 at 49:11–17. During that time, plaintiff asserts that she did not have a desk. ECF No. 55-1 at 48:4–49:10. On October 23, 2013, the plaintiff was transferred to the service department at the Used Dealer. ECF Nos. 49-1, ¶ 27; 59-1, ¶ 27. According to Supervisor Pablo Maldonado Olivieri, at the time of plaintiff's transfer, he had not requested any new employees nor had any employees resigned or been terminated. ECF No. 64-1, at 18:16–24. Plaintiff avers that she spent two weeks at this location without either a chair or a desk. ECF No. 59-2, ¶ 6. Both parties agree that while plaintiff worked in the service department, she was excluded from the service department employee meetings. ECF Nos. 49-1, ¶ 41; 59-1, ¶ 41. Plaintiff further claims that she had "zero duties" at the service department. ECF No. 55-1 at 233:18–19. Furiel Auto cites to

opponent. See Vázquez, 134 at 34. This statement must be excluded. Id. Last, plaintif alleges that the cleaning personnel told plaintiff they were ordered to clean the bathroom the way they were cleaning it. ECF No. 55-1 at 211:19–212:1. When asked who gave the order, plaintiff responded that she was "unable to say." Id. at 212:2–3. Again, plaintiff relies on an unidentified declarant, thus the Court cannot determine if the statement is admissible and the statement must be excluded. Id.

[3] The defendant contends that plaintiff's sworn statement should be discredited because it is a "self-serving" statement that is an "attempt to manufacture an issue of fact so as to defeat summary judgment." ECF No. 66-1, at 3-4. However, a "party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 961 n.5 (1st Cir. 1997). The case cited by the defendant, on the other hand, relates to the "sham affidavit doctrine", which bars the consideration of a later-in-time affidavit of an interested party to contradict prior deposition testimony. See Malave-Torres v. Cusido, 919 F.Supp.2d 198, 202-04 (D.P.R. 2013). The defendant did not provide any citation to a portion of the sworn statement that directly contradicts the plaintiff's deposition testimony. As the defendant points out, the Court is under no obligation to "ferret through the Record" to find support for a party's allegations when a specific citation is not provided. ECF No. 66-1, at 3. Thus, the affidavit here falls into the type of affidavit that Malave-Torres specifically excludes from the "sham affidavit doctrine"— affidavits that elaborate on or clarify deposition testimony.   Id.

plaintiff's deposition as demonstrating that plaintiff's duties included "taking care of the reception area, taking calls, coordinating and confirming clients appointments, transportation to clients, guidance to clients in regards to services, and even provides clients with inquiries regarding the cost of maintenance services." ECF No. 49-1, ¶ 36. Plaintiff counters that all of these functions, with the exception of client transportation, are merely a result of her answering the phones. ECF Nos. 55-1 at 96:13–99:22; 59-1, ¶ 36. Further, plaintiff claims that she would only answer the phone when one of the three service advisors were not at their desks. ECF No. 59-2, ¶ 6.

Next, plaintiff alleges that Furiel Auto took two separate employment actions that affected her pay. ECF. No. 59-1, ¶ 43. Plaintiff alleges that her hours were reduced for a week.[4] ECF No. 55-1 at 257:9–20. Furiel Auto argues that other employees' hours were also reduced. ECF No. 49, at 14–15. In her Memorandum in Opposition to Defendant's Motion for Summary Judgment, plaintiff states that her schedule was the only one reduced. ECF No. 59, at 8. However, both plaintiff's Response to Defendant's Statement of Uncontested Facts, ECF No. 49-1, ¶ 44, and the plaintiff's own deposition, ECF No. 55-1 at 296:19–297:5, concede that other employees have had their salaries reduced. According to the plaintiff, these are distinguishable because the other employees' schedules were reduced "a while back." ECF No. 55-1 at 296:19–297:5. Next, plaintiff argues that she was denied the opportunity to make up the hours from a missed day of work. ECF No. 59-2, ¶ 13. According to her affidavit, plaintiff was absent on November 9, 2013 for an appointment with her obstetrician. Id. She states that employees

---

[4] Plaintiff alleges in the Response to Defendant's Statement of Uncontested Facts that her hours were reduced from 40 to 30, but gives no citation to the record to support this. ECF No. 59-1, ¶ 52. Local Rule 56(e) provides that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified material supporting the assertion." It states that "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." Plaintiff presents a letter from Human Resources that indicates that her new schedule is from 7:00 am to 2:00 pm. ECF No. 64-6. However, there is no evidence of plaintiff's previous schedule for comparison; there is no information of this even in plaintiff's own sworn statement.

typically make up the hours for such an absence by coming in on a day that they were not scheduled to work. Id. When plaintiff came to work on a day off to make up her time, however, she was subsequently forced to take a scheduled work day off, thus preventing her from making up the hours from that original absence. Id.

Lastly, the plaintiff lists various other working conditions that she argues amount to adverse employment actions. One aspect of her complaint revolves around the restroom facilities. Plaintiff alleges that she had to share a bathroom with seventeen men. ECF No. 59-2, ¶ 9. Plaintiff, in her own deposition, however, admits that all other employees at the dealership used the same bathroom, including the female employees. ECF No. 55-1 at 164:1–23. Plaintiff also contends that the bathroom was originally maintained in a "deplorable and antigenic" condition, ECF No. 49-2, ¶ 9, because mechanics left the bathroom dirty and full of grease that was not cleaned properly, ECF No. 55-1 at 210:8–211:6. At some point, according to the plaintiff, the bathroom began being cleaned, but the cleaning personnel would overuse Clorox, which emitted a strong odor. ECF No. 55-1 at 211:12–23. The personnel allegedly continued this overuse of Clorox despite the plaintiff explaining that the odor was too strong. ECF No. 55-1 at 211:19–23. Plaintiff further alleges that she was subject to strict supervision constituting adverse employment action. Specifically plaintiff complains that her supervisors were "hanging around [her], staring at [her], and trying to figure out what [she] was doing." ECF No. 49-1, ¶ 10. Additionally, plaintiff asserts that she was required to submit a medical certificate explaining her absence on November 29, 2013. ECF No. 49-2, ¶ 12. Plaintiff points to the FAC general regulations that state a medical certification is required after 3 consecutive absences.[5] ECF No. 64-3.

---

[5] Plaintiff also provided a memorandum that FAC sent all personnel stating that employees have a legal obligation to provide a medical certification after being absent for two consecutive days. ECF No. 64-4. However, this

There exists a genuine issue of material fact as to whether the plaintiff's transfer, the changes in her schedule, and her general working conditions, viewed cumulatively, constitute adverse employment action. Taking plaintiff's allegations as true, immediately after plaintiff informed Furiel Auto of her transfer, she was transferred to a different building for a day and a half, during which she was left with no desk. Plaintiff was then immediately transferred again. Plaintiff was then left standing without a desk or chair for at least two weeks while pregnant. She was stripped of three duties—verifying sales contracts for units sold, registering the Toyota vehicles, and keeping the inventory of vehicles—that demonstrate the trust and responsibility that Furiel Auto had previously placed in her, particularly given that these duties were not subsequently performed by another office assistant, but rather the General Manager. Plaintiff's duties in her new role revolved mostly around answering the phones, despite the fact that plaintiff did not have a desk and only answered a phone when one of the service advisors was not at their desk. If a jury were to credit the plaintiff, this is a significant shift from her previous duties, particularly when viewed in conjunction with the plaintiff's allegation that she was transferred despite the lack of need for personnel in the service department. Even if some of the individual instances might not rise to the gravity of adverse employment action, a reasonable jury could find that the weight of all the actions taken together materially changed the conditions of the plaintiff's employment.

### ii.  Duties Continue to Be Performed by a Comparably Qualified Person

The fourth prong of a *prima facie* disparate treatment claim is that the plaintiff continued to have her duties performed by a comparably qualified person. See Santiago-Ramos, 217 F.3d at 54.

---

memorandum was distributed at least a month after plaintiff's absence.  Id.

Plaintiff contends that her supervisor Wilfredo Flores told her that her duties were taken over by General Manager Edguardo Santiago. ECF No. 55-1 at 135:1–9. Furiel Auto objects to this evidence as hearsay. ECF No. 66, at 2. Although this does present a potential double hearsay issue, the statement is a non-hearsay admission of an agent of a party opponent under Fed. R. Evid. 801(d)(2)(D). A statement is not hearsay if it is "offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed . . . ." Fed. R. Evid. 801(d)(2)(D). It is not necessary that the statement itself is "within the scope of the declarant's agency." Larch v. Mansfield Mun. Elec. Dep't, 272 F.3d 63, 72 (1st Cir. 2001) (quoting 5 Jack B. Weinstein & Margaret A Berger, Weinstein's Federal Evidence, § 801.33[2][c], at 801–69 (2d ed. 2001)). "It need only be shown that the statement be related to a matter within the scope of the agency." Id. "[C]ircumstantial evidence may establish the scope, as well as the existence, of the agency relationship." Pappas v. Middle Earth Condominium Ass'n, ,963 F.2d 534, 538 (2d Cir. 1992); see also, Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 134 (3rd Cir. 1997) (finding that unidentified agents acted within the scope of their agency, based only on the knowledge that the agents were executives with the authority to make personnel decisions who were asked by the CEO to state their views on the state of the workforce); cf. LaRou v. Ridlon, 98 F.3d 659, 663 (1st Cir. 1996) (finding a statement was hearsay because the speaker was not identified by *either* name *or* position). The statement at issue here was made by plaintiff's supervisor in the course of informing the plaintiff that she was no longer responsible for performing those duties. ECF No. 55-1 at 135:1–9. It is a reasonable inference that it is within the scope of an employee's direct supervisor to inform the employee of her duties.

Even if the statement were not admissible, the fourth prong would still be met due to the nature of the duties performed. The plaintiff does not need to specifically identify the comparably qualified individual who continued to perform her duties. Cumpiano, 902 F.2d at 155. But rather, the fourth prong is satisfied upon a showing that "the employer had a continued need for 'someone to perform the same work after [the plaintiff] left." Id; see also Figueroa Telemaco v. Mobile Paints Mfg. Co., Inc., 421 F.Supp.2d 440 (D.P.R. 2006) ("The fact that Plaintiff's duties had to be delegated to someone else within the company makes the necessary showing that Mobile Paints had a continuing need for someone to perform Plaintiff's work after her termination . . .").

The duties taken from the plaintiff are verifying sales contracts for units sold, registering the Toyota vehicles, and keeping the inventory of vehicles. ECF No. 59-2, ¶ 3. Drawing all reasonable inferences in plaintiff's favor, it is reasonable to infer that Furiel Auto had a continued need for someone to perform at least one of the plaintiff's three duties. Thus, either through the evidence that Edguardo Santiago took over the duties or based on Furiel Auto's continuing need for someone to perform the duties, plaintiff has met the fourth prong.

As plaintiff has presented evidence sufficient to create a genuine issue of material fact as to the third and fourth prongs of the *prima facie* case, the burden now shifts to the defendant.

### iii.  Furiel Auto's Legitimate, Nondiscriminatory Reasons

Furiel Auto must now articulate legitimate, nondiscriminatory reasons for the employment actions. Dance v. Ripley, 776 F.2d 370, 373 (1st Cir. 1985). "The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). These

reasons, shown by admissible evidence, must be "legally sufficient to satisfy a judgment for the defendant." Id. "[T]he defendant's explanation of its reasons must be clear and reasonably specific." Johnson, 731 F.2d at 70. However, "[t]he burden of persuasion on the issue of discriminatory intent always remains with the plaintiff . . . ." White v. Vathally, 732 F.2d 1037, 1040 (1st Cir. 1984).

When a defendant fails to present evidence of legitimate, nondiscriminatory reasons, the court's inquiry stops. See Velez-Sotomayor v. Progreso Cash & Carry, Inc., 279 F.Supp.2d 65, 79 (D.P.R. 2003). Furiel Auto did not present any explanation for the majority of plaintiff's complaints, including why plaintiff was transferred twice within two days, why the plaintiff was not provided a chair or desk for at least two weeks, and why some of plaintiff's duties were taken away. As these claims make up the bulk of the plaintiff's adverse employment action, the Court need not proceed to look at pretext.

The Court, however, will proceed to evaluate those claims that Furiel Auto did respond to. Furiel Auto contends that plaintiff was not the only one transferred, but rather one of many moved to the Used Dealer due to the construction in the New Dealer. ECF No. 49-1, ¶¶ 14, 24. Next, in response to the plaintiff's complaints about the restroom, Furiel Auto states that all employees use the restroom under the same conditions. ECF No. 49-1, ¶ 38. Regarding plaintiff's exclusion from employee meetings, Furiel Auto notes that the only employees who attend the meetings are technical personnel and service advisors. ECF No. 49-1, ¶ 41. Plaintiff admits that she is neither an auto mechanic technician nor a service advisor. ECF No. 59-1, ¶ 42. These reasons are sufficient to meet Furiel Auto's burden of merely articulating nondiscriminatory reasons for the employment action addressed.[6]

---

[6] In relation to the medical certification, Furiel Auto appears to argue that although employees

Assuming arguendo that Furiel Auto's failure to respond to the majority of plaintiff's claim is not fatal, the analysis then turns on what evidence, if any, has been brought to the Court's attention to show that the reasons Furiel Auto did proffer are merely a pretext for discriminatory action.

### iv.  Mere Pretext

Plaintiff must now show that the defendant's reasons were not actually the true reasons for the employment action. Burdine, 450 U.S. at 256. Plaintiff can establish that Furiel Auto's reasons were pretextual in two ways, "either indirectly by showing that the employer's stated reasons for its adverse action were not credible or by directly showing that the action was more likely motivated by a discriminatory reason." Hodgens v. General Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998) (internal quotations omitted). One way of attacking credibility is to show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credent . . . ." Id. Temporal proximity alone is not sufficient to establish that the defendant's proffered reasons are mere pretext.  See, e.g., El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2nd Cir. 2010); Woodruff v. Peters, 482 F.3d 521, 530 (D.C. Cir. 2007); Annett v. University of Kansas, 371 F.3d 1233, 1240 (10th Cir. 2004); Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1070 (9th Cir. 2003); Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309, 317 (6th Cir. 2001); Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1114 (8th Cir. 2001).  However, "courts should exercise particular caution before

---

are always required to submit such certification after 3 days absence, the company has the right to ask for a medical certification following an absence of any duration, ECF No. 49-1, ¶ 46, but nowhere is that explicitly stated.

granting summary judgment for employers on such issues as pretext, motive, and intent." Santiago-Ramos, 217 F.3d at 54.

The bulk of plaintiff's argument that Furiel Auto's actions were pretextual lies in the timing of those actions. ECF No. 59, at 14, 18. The allegedly adverse employement actions, according to the plaintiff, began "within days" of plaintiff notifying Furiel Auto that she was pregnant. Id. at 14. However, plaintiff does not rely on the timing alone. Rather, plaintiff also points to the fact that she was transferred twice within two days, that there were no vacancies requiring her transfer, and that the offices to which she was transferred were not prepared for her arrival. Id. at 19. These are sufficient inconsistencies, coupled with the fact that defendant did not proffer any reasons for many of plaintiff's other allegations, to present a genuine issue of material fact. Therefore, the defendant's motion for summary judgment on plaintiff's disparate treatment claim is denied.

### b. Hostile Work Environment

To prevail on a gender discrimination, hostile work environment claim a plaintiff must show that: she is a member of a protected class; she was subjected to unwelcome harassment; the harassment was based on the protected characteristic; the harassment was sufficiently pervasive or severe so as to alter the conditions of her employment and create an abusive work environment; the objectionable conduct was both objectively and subjectively offensive such that a reasonable person would find it hostile or abusive and that she did in fact perceive it to be so; and some basis for employer liability has been established. See Valentín-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006). In contrast to the disparate treatment that claim requires proof of adverse employment action, the hostile work environment claim requires plaintiff to show that her "work environment was so pervaded by [gender-based]

harassment as to alter the terms and conditions of [her] employment". <u>Burlington Industries</u>, 524 U.S. at 768. This analysis must consider the totality of the circumstances including "the frequency of the discriminatory conduct; it's severity,' whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 22 (1993). "There is no 'mathematically precise test' for determining when conduct in the workplace moves beyond 'merely offensive' and enters the realm of unlawful discrimination. <u>Marrero</u>, 304 F.3d at 18 (citing <u>Harris</u>, 510 U.S. at 21). Not all harassment based on sex has to be sexual in nature, but the harassment must be motivated by the plaintiff's protected characteristic. <u>See</u> <u>O'Rourke v. City of Providence</u>, 235 F.3d 713, 729 (1st Cir. 2001) (citing <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75 (1998)).

Plaintiff identifies a number of actions that she contends constitute harassment based on her pregnancy: (1) lack of desk and chair, (2) being excluded from meetings, (3) being deprived of any substantial duties, (4) being forced to share a male bathroom, (5) being forced to inhale bleach fumes, (6) being exposed to a sexual suggestive picture, and (7) being required to drive around customers, (8) being required to bring a medical certificate. ECF No. 59, at 21. The first three allegations fall more appropriately in the plaintiff's disparate treatment claim. <u>See</u> <u>Burlington Industries</u>, 524 U.S. at 768. The next three allegations are also not appropriate for review here as they are conditions that were not directed at the plaintiff, but shared by service department employees regardless of gender or maternity status. The plaintiff's deposition confirms that despite the bathroom being designated a "male bathroom", it was in fact used by all employees in the department, including other females. ECF No. 55-1 at 164:1–23. Similarly, there is no evidence that the use, or alleged overuse, of cleaning products in the shared bathroom

was targeted at plaintiff. Plaintiff's only overt reference to sexual harassment is the claim that she was "tagged" in a picture of a candy bar shaped like a phallus. ECF No. 59-2, ¶ 14. However, the plaintiff admits that this picture was not directed at her. ECF No. 55-1 at 271:10–12. Plaintiff was one of multiple people that could view a conversation in WhatsApp. ECF No. 59-2, ¶ at 14. The message containing the picture was part of a conversation between Pablo Maldonado Olivieri and John Aviles. ECF No. 55-1 at 270:2–271:8. Plaintiff cannot claim as harassment situations that apply equally to many employees, regardless of gender or maternity.

Plaintiff's hostile work environment claim must then rest upon the two remaining allegations, that plaintiff was required to drive customers and provide a medical certificate. In her Memorandum in Opposition to Defendant's Motion for Summary Judgment plaintiff states that she was "forced to drive around primarily male customers." ECF No. 59, at 21. In the amended complaint the plaintiff specified that this job was previously done by "Advisory Services Personnel." ECF No. 24, ¶ 40. However, "in opposing summary judgment, a litigant 'may not rest upon mere allegations in, say, an unverified complaint or lawyer's brief, but must produce evidence which would be admissible at trial to make out the requisite issue of material fact.'" Fragoso v. López, 991 F.2d 878, 887 (1st Cir. 1993) (quoting Kelly v. United States, 924 F.2d 355, 357 (1st Cir. 1991)). The only potentially admissible evidence presented for summary judgment was plaintiff's statement in her affidavit that she was "asked to drive customers to the shopping center or to their home while their car was serviced." ECF No. 59-2, ¶ 6. This assignment to a different duty, without further evidence of the nature of the duty or characteristics that make the assignment abusive, is not harassment. Plaintiff also alleges that before returning to work after a one day absence she was required to bring a medical certificate to justify her absence. ECF No. 49-2, ¶ 12. Plaintiff provides the Furiel Auto general regulations

that require a medical certification after three consecutive absences. ECF No. 64-3. Although determining a hostile work environment "is often reserved for a fact finder, . . . summary judgment is an appropriate vehicle for 'polic[ing] the baseline for hostile environment claims.'" Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 83 (1st Cir. 2006) (internal quotations omitted) (alteration in original).

Even accepting as true that employees are generally not required to submit such certificates when they have only been absent for one day, this single incident is not so severe or pervasive as to alter the conditions of plaintiff's employment.  Therefore, plaintiff's hostile work environment claim under Title VII is dismissed with prejudice.

### c.  Claims Under Puerto Rico Law

#### i.  Law 100 and Law 69

Law 100, P.R. Laws Ann. tit. 29 § 146, is Puerto Rico's general employment discrimination statute. Law 69, P.R. Laws Ann. tit. 29 § 1323, expands on Law 100 by more specifically prohibiting gender discrimination, including pregnancy. Although these two statutes prohibit conduct similar to that prohibited under Title VII, the Puerto Rico laws are "more plaintiff friendly than [the] federal counterpart." Salgado-Candelario v. Ericsson Caribbean, Inc., 614 F.Supp.2d 151, 176 (D.P.R. 2008). Specifically, the burden-shifting mechanism under Law 100 operates differently. The plaintiff must initially establish "(1) that she suffered an adverse employment action; (2) that the adverse employment action was not justified; and (3) some basic fact substantiating the type of discrimination alleged." Medina v. Adecco, 561 F.Supp.2d 162, 175 (D.P.R. 2008). In determining whether an employment action was justified, Puerto Rican courts utilize the definition of "good cause" from Law 80, P.R. Laws Ann. tit. 29 § 185a. Hoyos v. Telecorp Communications, Inc., 405 F.Supp.2d 199, 207 (D.P.R. 2005). Under Law 80, good

cause to take adverse employment actions is "(a) that the worker indulges in a pattern of improper or disorderly conduct[;] (b) The attitude of the employee of not performing his work in an efficient manner, or of doing it belatedly and negligently or in violation of the standards of quality of the product produced or handled by the establishment[; or] (c) The employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been opportunely furnished to the employee." P.R. Laws Ann. tit. 29, § 185b. Establishing these factors creates a rebuttable presumption of discrimination. Salgado-Candelario, 614 F.Supp.2d at 176. Under Law 100 not just the burden of production, but also the burden of persuasion shifts to the defendant, who must prove by a preponderance of the evidence that the employment action was not driven by discriminatory animus. Mejías Miranda v. BBII Acquisition Corp., 120 F.Supp.2d 157, 174 (D.P.R. 2000).

Here, as discussed above in relation to Title VII, viewing the evidence in a light most favorable to the plaintiff, she has sufficiently alleged that she suffered an adverse employment action. In satisfaction of the second prong, plaintiff stated in her deposition that she never received a written admonishment. ECF No. 55-1 at 108:1–7. Plaintiff received only one verbal admonishment, for arriving late to work, but this was in the year after the alleged adverse employment action was taken. ECF No. 55-1 at 108:17–24. Defendants stipulate to the third prong's requisite "basic fact" that plaintiff was at the relevant time pregnant. ECF No. 49, at 7. Thus, plaintiff has established her *prima facie* case.

The burden now shifts to the defendants. Although the defendants have advanced a few justifications for a few of the allegedly adverse employment actions, this is not sufficient under Law 100. Unlike the federal claim where the defendants merely need to "articulate"

nondiscriminatory reasons, here the defendant has the burden of producing evidence that their employment actions were nondiscriminatory.

Where a plaintiff survives summary judgement on their Law 100 claim, the Law 69 claim also survives. See Medina, 561 F.Supp.2d at 175; Mejías Mirana, 120 F.Supp.2d at 174. Therefore, the defendant's motion for summary judgment on plaintiff's claims under Law 100 and Law 69 is denied.

### ii.  Law 17

Law 17, P.R. Laws Ann. tit. 29 § 155 is Puerto Rico's prohibition on sexual harassment. It provides that: "Sexual harassment in employment consists of any type of undesired . . . verbal or physical behavior of a sexual nature or that is reproduced by using any means of communication . . . when one or more of the following circumstances occur: . . . (c) When the conduct has the effect or purpose of interfering unreasonably with the performance of such person's work or when it creates an intimidating, hostile or offensive work environment." Law 17 has been interpreted as being coextensive with the federal Title VII hostile work environment claim. See Figueroa Garcia v. Lilly Del Caribe, Inc., 490 F.Supp.2d 193, 213 (D.P.R. 2007). As plaintiff's Title VII hostile work environment failed, so must her claim under Law 17. Therefore, plaintiff's claim under Law 17 is dismissed with prejudice.

### V.   CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**, as follows. With respect to plaintiff's Title VII hostile work environment and Law 17 claims, the defendants' motion for summary judgment is **GRANTED**, and the claims are dismissed with prejudice. With respect to plaintiff's Title VII disparate

treatment, Law 100, and Law 69 claims, the defendants' motion for summary judgment is **DENIED** and the claims remain active.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 9th of October, 2015.

s/Marcos E. López
U.S. Magistrate Judge